IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JONATHAN ESTRADA,

    Plaintiff,

vs.                                                      CIV No. 21-0653 KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Jonathan Estrada ("Plaintiff's") Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (Doc. 24), dated March 4, 2022, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that he is not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. The Commissioner responded to Plaintiff's Motion on May 24, 2022 (Doc. 34), and Plaintiff filed a reply brief on June 17, 2022 (Doc. 35). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Plaintiff's Motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. PROCEDURAL POSTURE

Plaintiff was granted supplemental security benefits as a child as of January 1, 2018. (*See* Administrative Record ("AR") at 13). At that time, his severe impairments were Attention Deficit Hyperactivity Disorder ("ADHD") and asthma. (*See* AR at 77). Pursuant to Section

1614(a)(3)(H)(iii) of the Social Security Act, Plaintiff's eligibility for disability benefits was redetermined when he turned 18 years of age under the rules for determining disability in adults. (*See id.* at 13). Plaintiff's disability benefits were denied upon redetermination. (*Id.* at 71-84, 514). At Plaintiff's request, ALJ Jeffrey Holappa held a hearing as to the redetermination of his disability benefits. (*Id*. at 31-66). Plaintiff was represented by counsel and testified at the February 5, 2021 hearing, as did a vocational expert. (*Id.*).

On February 25, 2021, ALJ Holappa issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (*Id.* at 13-24). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 9), and on May 19, 2021, the Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On July 16, 2021, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may

neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA

has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

ALJ Holappa redetermined Plaintiff's disability claim pursuant to the five-step sequential evaluation process. (AR at 13-24). First, he found that Plaintiff attained the age of 18 on September 5, 2018, which necessitated a redetermination of his eligibility for disability benefits under the rules for adults who file new applications. (*Id*. at 15). The ALJ then found at step two that since March 1, 2019, Plaintiff suffered from the nonsevere impairments of insomnia and a fractured finger as well as the following severe impairments:  asthma, obesity, ADHD, and bipolar disorder. (*Id.*). At step three, the ALJ concluded that Plaintiff did not have

4

an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 16-18).

Moving to the fourth step, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 18-23). Having done so, he concluded that for the relevant period, Plaintiff possessed an RFC to

> perform medium work as defined in 20 [C.F.R. §] 416.967(c) except he can lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently. He can sit, stand, and walk for six hours in an eight-hour workday. He [is] limited to frequent climbing of ramps & stairs, occasional climbing [of] ladders or scaffolds, and frequent balancing, stooping, kneeling, crouching and crawling. [He] is further limited to no more than occasional exposure to extreme cold, dust, odors, fumes, pulmonary irritants, and no exposure to unprotected heights or moving mechanical parts. Finally, [he] is limited to understanding, remembering and carrying out simple, routine, and repetitive tasks; making simple work-related decisions, dealing with changes in a routine work setting, maintaining concentration, persistence, and pace for at least two hour intervals, and occasional interactions with others including supervisors, co-workers and the general public.

(*Id.* at 18).

After determining that Plaintiff had "no past relevant work," (*id.* at 23 (citing 20 C.F.R. § 416.965)), the ALJ proceeded to step five, where he determined that, since March 1, 2019, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 23-24). The ALJ therefore concluded that Plaintiff's work was not precluded by his RFC and that he had not become disabled again following the end of his disability on March 1, 2019. (*Id.* at 24).

## IV. DISCUSSION

Plaintiff contends that the ALJ improperly assessed his severe impairments (*see* Doc. 24 at 5-7); that he improperly evaluated the medical opinions of Plaintiff's psychological consultative examiner as well as the prior administrative findings of the state agency

psychological consultants at both the initial and reconsideration levels (*id*. at 7-15); that he improperly assessed Plaintiff's subjective symptoms (*id*. at 15-18); that he erred in posing a hypothetical question to the vocational expert and in failing to clarify her testimony under Social Security Ruling ("SSR") 00-4p (*id*. at 20); and, finally, that he failed to find the existence of three jobs as required by the Program Operation Manual System ("POMS") DI 25025.030(B) (*id*.). The Court takes up the issue of the ALJ's evaluation of medical opinions, as those opinions bear directly upon the ALJ's assessment of Plaintiff's severe impairments. Ultimately the Court disagrees that the ALJ erred in his treatment of the psychological consultative examiner's opinions but agrees that he erred in his treatment of the state agency psychological consultants' prior administrative findings. Because a reevaluation of the state agency psychological consultants' findings may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**A. Evaluation of Medical Opinions and Prior Administrative Findings**

The ALJ determined that the opinions of psychiatrist Dr. James Benvenuti and the findings of Drs. Brad F. Williams and Richard Sorensen were "persuasive." (AR at 21). Plaintiff submits, however, that in so finding the ALJ failed to properly account for the limitations these medical sources assessed. (Doc. 24 at 7-15). Because Plaintiff's disability benefits were redetermined after March 27, 2017, ALJ Holappa was required to evaluate the medical opinions and prior administrative findings in this case under the revised regulations found in 20 C.F.R. § 416.920c. *See Zhu v. Comm'r SSA*, No. 20-3180, 2021 WL 2794533, at *4 & n.8 (10th Cir. July 6, 2021). Under the revised regulations, no specific evidentiary weight or deference is given to medical opinions or prior administrative findings. *See* 20 C.F.R. § 416.920c(a). Instead, they

are evaluated on equal footing using the factors enumerated in the regulations. *See* 20 C.F.R. § 416.920c(c)(1)-(5).

However, the revised regulations impose "articulation requirements" on an ALJ. *See* 20 C.F.R. § 416.920c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he considered each individual medical opinion, but he must "articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis." 20 C.F.R. § 416.920c(b)(1). Second, an ALJ must consider five factors when evaluating medical opinion evidence, *see* 20 C.F.R. § 416.920c(c)(1)-(5); however, he is generally only required to articulate his consideration of two of those factors: supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Third and finally, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors[,]" including the source's relationship with their client, any specialization, and other factors that tend to support or contradict the opinion or finding. 20 C.F.R. §§ 416.920c(b)(3), 416.920c(c)(3)-(5).

Although the ALJ is generally "not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009-10, he has, at minimum, a duty to address the persuasive value of medical opinions and prior administrative findings. *See id*. The new regulations do not alter the standard of review, however. Thus, an ALJ's persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion," *Misgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). As before, an ALJ must "consider all relevant evidence in the case record," *Silva v. Saul*, No. CIV 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court with a

7

"sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).

### 1. Opinions of Dr. Benvenuti

Psychiatrist Dr. James Benvenuti conducted a mental evaluation of Plaintiff at the request of Disability Determination Services on February 15, 2019. (*See* AR at 451-54). Dr. Benvenuti reported that, according to Plaintiff, his most significant problem was lapses of memory. (*Id*. at 451). Dr. Benvenuti noted a "long history" of high distractibility, impulsivity, very high energy, and difficulty paying attention. (*Id*.). He indicated that Plaintiff "endorses the full panoply of manic symptoms . . . on the mood disorder questionnaire, which [Plaintiff] believes has been a minor problem." (*Id*.). In his mental status findings, Dr. Benvenuti noted psychomotor retardation, sarcastic attitude, blunted affect, and being "disrespectful of this situation with some flavor of malingering." (*Id*. at 452). Dr. Benvenuti observed that Plaintiff's "insight seems poor regarding his diagnosis, treatment and follow-up." (*Id*. at 453). Yet, he described Plaintiff's "mental activity [as] coherent and linear" and found that he was oriented "times three." (*Id*.). With respect to memory, Dr. Benvenuti found that Plaintiff's immediate memory was "intact," but he observed that Plaintiff scored "only mental age seven and a half years" on more rigid testing of the Detroit Auditory Attention Span For Unrelated Words, which indicated a "severe attention disorder." (*Id*.). In the "Functional Assessment" portion of his report, Dr. Benvenuti made the following relevant findings:

> [Plaintiff] appears to have the ability to reason and understand. He does have some adaption skills. Remote memory seems intact. Recent memory is sufficient. Immediate memory shows a significant impairment . . . , which may require special consideration in a work setting. Sustained concentration and persistence are adequate based on brief concentration tasks of this evaluation. [Plaintiff] does not describe difficulty on follow-through with tasks, but [his] parents state this has been an impairment throughout his school career. Parents also describe significant interpersonal challenges in his personal life as a result of AD/HD symptoms of

>impulsivity, for instance. [Plaintiff's] ability to interact with co-workers and the public is likely **moderately impaired**. Due to AD/HD and mood disorder symptoms and tendency to isolate himself from others, his ability to maintain regular attendance in the workplace is **moderately impaired**. His ability to complete a normal work day or work week without interruption from AD/HD or mood disorder symptoms is also likely **moderately impaired**. His ability to deal with the usual stress encountered in the workplace is also considered **moderately impaired** if it involves persistent activity, complex tasks, task pressure and interacting with other individuals.

(*Id*. at 454 (emphasis added)). The ALJ, for his part, specified that he found Dr. Benvenuti's opinion "persuasive," as it was "consistent with the diagnosis and history of ADHD" and with Plaintiff's "overall school performance, and with his testimony." (*Id*. at 22).

Plaintiff maintains that the ALJ's error was in "failing to find greater mental limitations in the RFC and failing to account for all of Dr. Benvenuti's assessed moderate limitations." (Doc. 24 at 8). In Plaintiff's view, the ALJ adopted Dr. Benvenuti's moderate limitation as to his ability to interact with coworkers and the public but disregarded his "other at least moderate limitations in the areas of concentration, persistence and maintaining pace and in the ability to adapt and manage himself." (Doc. 24 at 9 (citing AR at 18, 454)).

First, with respect to Plaintiff's ability to concentrate, persist, and maintain pace, Plaintiff submits that the ALJ erred when he suggested that Dr. Benvenuti "found no more than moderate impairments." (*Id*. at 10 (quoting AR at 21)). Plaintiff argues that this characterization of Dr. Benvenuti's opinion was inaccurate and, further, that the ALJ's RFC effectively omitted any limitation in this area of functioning. (*Id*.) The Commissioner, on the other hand, maintains that the ALJ adequately accounted for Dr. Benvenuti's limitations in this area of functioning, reasoning that Dr. Benvenuti merely provided a "vague assessment of a 'moderate' impairment" in concentration and that it was the "ALJ's duty to translate this finding into a work-related restriction." (Doc. 34 at 9-11 (citing AR at 18, 20 C.F.R. § 4016.946(c)). The Commissioner

contends that the ALJ reasonably fulfilled this duty by limiting Plaintiff to simple, routine, and repetitive tasks, to maintaining concentration for only two-hour intervals, and to having only occasional social interactions. (*Id*. at 11). The Commissioner cites *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015) and *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) for the proposition that the Tenth Circuit has "endorsed the approach taken by the ALJ in this case" whereby a plaintiff is limited to unskilled work to account for moderate mental limitations. (Doc. 34 at 10.)

But Plaintiff's argument strikes the Court as more fundamental than the Commissioner suggests. Plaintiff contends that Dr. Benvenuti found *more-than-moderate* limitations in his ability to maintain concentration, persistence, and pace and, thus, that the ALJ's determination – that Dr. Benvenuti "found no more than moderate impairments" – was contrary to the record. (Doc. 24 at 10). In support, Plaintiff submits that Dr. Benvenuti's "assessment of 'significant impairment,' while not couched in officially sanctioned language used by the Social Security Administration, appears to indicate a level higher, or more disabling, than moderate limitations, as it aligns with the language of what is considered a 'marked' limitation, which is defined as supporting a conclusion that the individual cannot usefully perform or sustain the activity." (*Id*. (citing POMS DI 24510.063(B)(3))). Plaintiff emphasizes that Dr. Benvenuti scored him at a mental age of seven-and-a-half-years old despite his true age of 18. (*Id*. (citing AR at 454)). He also contends that a higher-than-moderate concentration limitation is consistent with CNP Sheffield's records, which suggest that his concentration was "not normal," and the findings of other medical sources, which indicate distractibility, lack of attention and control, trouble completing assignments, lack of focus, and difficulty following simple instructions. (*Id*. (citing AR at 458, 462-63, 468, 490)). But not only does Plaintiff take issue with the ALJ's characterization of Dr. Benvenuti's opinions, he also asserts that the ALJ's RFC effectively

omitted any limitation in this area of functioning, as "maintain[ing] concentration, persistence, and pace for at least two hour intervals," to which the ALJ limited Plaintiff, is one of the "mental abilities needed for *any* job." (*Id*. at 10-11 (citing AR at 18, POMS 25020.010) (emphasis added)).

The Court's own examination of Dr. Benvenuti's mental evaluation reveals that Dr. Benvenuti did not directly describe Plaintiff's limitation in his ability maintain concentration, persistence, and pace as "moderately limited." (*See* AR at 451-54). Dr. Benvenuti's findings were more nuanced. He opined that Plaintiff had an "adequate" ability to sustain concentration and persistence as to the "brief concentration tasks of [his own] evaluation." (*Id*. at 454). He also made other findings that bear on Plaintiff's ability to maintain concentration, persistence and pace. For instance, he opined that Plaintiff's "significant impairment" in immediate memory "may require special considerations in a work setting." (*Id*). And he opined that Plaintiff is "moderately impaired" in his ability to deal with the "usual stress" of the workplace when it "involves persistent activity, complex tasks, task pressure and interacting with other individuals." (*Id*.). In other words, Dr. Benvenuti acknowledged an impairment in the area of concentration, persistence, and pace, for which some accommodations would be required, but he did not explicitly characterize those limitations as moderate, marked, or greater than moderate. Simply, it was the ALJ who indicated that Dr. Benvenuti found "no more than moderate impairments." (*See id*. at 21).

Still, the Court is satisfied that substantial evidence supports the ALJ's conclusion in that regard. Pursuant to the regulations, a moderate limitation means a claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is ***fair***," while a marked limitation indicates functioning on the same basis is "***seriously limited***." 20 C.F.R., pt. 404,

subpt. P. app.1, § 12.00(F)(2)(c), (d) (emphasis added). Notably, Dr. Benvenuti found Plaintiff's ability to sustain concentration and persistence "adequate," at least when performing the tasks required for purposes of his mental evaluation. (AR at 454). He also acknowledged Plaintiff's reports that he could read a book and remember what he reads, play video games and use the computer for two hours, and perform activities of daily living in a timely manner. (*Id*. at 453). Moreover, it is telling that Dr. Benvenuti found Plaintiff "***moderately*** impaired" in dealing with the "usual stress" of the workplace when work "involves persistent activity, complex tasks, task pressure and interacting with other individuals." (*Id*. at 454). The ALJ reasonably determined that Dr. Benvenuti found "no more than moderate limitations" in this area of functioning. Likewise, his own analysis of Plaintiff's functioning at step three of his sequential evaluation process led him to conclude that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. (*See id*. at 17).

    Not only is the Court satisfied that the ALJ did not mischaracterize Dr. Benvenuti's findings in this area of functioning, but the Court is equally persuaded that the ALJ's RFC adequately accounted for a moderate limitation in maintaining concentration, persistence, and pace. Although a limitation to unskilled work does not ***always*** account for a claimant's moderate mental limitations, *see Vigil*, 805 F.3d at 1203, unskilled work may account for moderate limitations in maintaining concentration, persistence, and pace, *see, e.g.*, *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016); *Padilla v. Berryhill*, No. CIV 17-329 GJF, 2018 WL 3830930, at *13 (D.N.M. Aug. 13, 2018). Here, Plaintiff has not pointed the Court to any authority to suggest that the RFC here did not adequately account for a moderate limitation in maintaining concentration, persistence, and pace. In the absences of such contrary authority, the Court is satisfied that it did.

Plaintiff makes the related assertion that the ALJ failed to incorporate Dr. Benvenuti's assessed moderate limitation in the ability to deal with the usual stress encountered in the workplace. (Doc. 24 at 11). Plaintiff asserts that by effectively permitting him to engage in work that would require him to "deal[] with changes in a routine work setting," the ALJ failed to account for his response to stress. (*Id.*). But, notably, the ALJ took pains to remove the significant elements of "usual stress" in a workplace – i.e. limiting Plaintiff to understanding, remembering, and carrying out simple, routine, and repetitive tasks, making simple work-related decisions, maintaining concentration persistence, and pace for only two-hour intervals, and only occasionally interacting with others. The Court finds that the ALJ accommodated Plaintiff's impairments, both in maintaining concentration, persistence, and pace and in adaption. Significantly, it can be inferred from Dr. Benvenuti's opinion that so long as Plaintiff was not required to complete complex tasks, to withstand significant task pressure, to persist for more than a few hours, or to frequently interact with others, his limitations were *less than moderate*. Moreover, the ALJ has offered a "sufficient basis [for the Court] to determine that appropriate legal principles have been followed" here. *See Jensen*, 436 F.3d at 1165. As such, the Court will not remand with respect to the ALJ's treatment of Dr. Benvenuti's opinion.

### ii. Prior Administrative Findings of Drs. Williams and Sorensen

Next, Plaintiff argues that the ALJ failed to incorporate into the RFC each of the moderate limitations found by the state agency psychological consultants, Drs. Williams and Sorensen. He complains that the RFC does not account for the consultants' assessed moderate limitations in the broad areas of social interaction and maintaining concentration, persistence, and pace. (Doc. 24 at 13-15.)

At the initial level of review, Dr. Williams completed a Psychiatric Review Technique ("PRT") in which he determined, in his consideration of the "paragraph B" criteria, that Plaintiff was moderately limited in his ability to interact with others and to concentrate, persist, or maintain pace. (AR at 78). Dr. Williams indicated that Plaintiff "felt able to maintain superficial social relationships with others[,] . . . has the ability to understand and complete simple work tasks[, and] felt he would be able to relate with others around him in an appropriate manner and persist and focus on tasks on an ongoing basis if so motivated." (*Id.*). He summarized Plaintiff's own impressions as to his abilities: "It is felt he retains potential for at least basic work." (*Id.*). Putting aside Plaintiff's impressions of his own abilities, Dr. Williams determined that Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work, complexity of tasks is learned and performed by rote, few variables, little judgment[, and] supervision required is simple, direct and concrete." (*Id.*). Dr. Williams also completed a Mental Residual Functional Capacity Assessment ("MRFCA") in which he found Plaintiff moderately limited in the following abilities: the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; the "ability to accept instruction and respond appropriately to criticism from supervisors"; and the "ability to set realistic goals or make plans independent of others." (*Id.* at 81).

At reconsideration, Dr. Sorensen recounted that on initial review Plaintiff was "found capable of unskilled work with moderate limitations in social and CPP." (*Id.* at 514). He summarized Plaintiff's records from early 2019, noting that he had just graduated high school and was planning to begin college; his cognition was intact; his mood was good; and his symptoms of ADHD were well-managed on medication. (*Id.*). Dr. Sorensen also noted that

Plaintiff's mood and affect had been normal on March 28, 2019, and January 18, 2019, and that he had appeared "very slightly anxious" on January 3, 2019, before his medications were adjusted. (*Id*.) Ultimately, Dr. Sorensen opined that Plaintiff's "condition appears unchanged." (*Id*.) He explicitly "affirmed" Dr. Williams's finding that Plaintiff was "capable of unskilled work." *Id*.

The ALJ, in turn, made the following finding: the "opinions of Brad F. Williams, PhD and Richard Sorensen, PhD [are] persuasive, supported by the objective medical evidence, and consistent with the evidence from all medical and non-medical sources." (*Id*. at 21 (internal citations omitted)). The ALJ acknowledged that the consultants found moderate limitations in the "paragraph B" criteria and "the ability to [perform] unskilled work with reduced social interactions." (*Id*.). He described these findings as "generally consistent with the in-person exams and findings by Dr. Benvenuti and Ms. Sheffield." (*Id*.). Despite characterizing the findings as persuasive, supported, and consistent, the ALJ did not parrot Dr. Williams's language from the PRT. (*See id*.). That is, instead of limiting Plaintiff to work "where interpersonal contact is *incidental* to work performed," as Dr. Williams had specified, the ALJ limited Plaintiff to "*occasional* interactions with others including supervisors, co-workers, and the general public." (*See id.* at 18 (emphasis added)). Plaintiff submits that the ALJ's limitation effectively addresses the *frequency* but not the *quality* of his interactions. (Doc. 24 at 13). Moreover, Plaintiff contends that the ALJ's RFC fails to account for the consultants' opinion that any supervision must be "simple, direct and concrete." (*Id*. at 14). The Commissioner concedes that the ALJ's RFC is not "identical" to the limitations opined by the psychological consultants but nevertheless maintains that the ALJ fulfilled his duty to translate the consultants' limitations

15

into vocationally-relevant terms. (Doc. 34 at 13 (citing 20 C.F.R. § 416.946 (c); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

The Commissioner's position finds support in this Court's prior holding in *Duran v. Berryhill*, No. 1:18-CV-349-KRS, 2019 WL 1568139 (D.N.M. Apr. 11, 2019). There, the state agency consultants articulated identical social limitations (i.e. "interpersonal contact is incidental to work performed, e.g. assembly work, complexity of tasks is learned and performed by rote, few variables, little judgment: supervision required is simple, direct and concrete"). *Id* at *4. This Court described the ALJ's RFC,[1] which limited the plaintiff to unskilled work with occasional interactions with supervisors, co-workers and the public, as "on par" with the consultants' findings. *Id*. The Court went on to explain that the ALJ there implicitly accepted the consultants' findings by adopting conclusions that were "borne out of [those] findings." *Id*. In so holding, this Court addressed an argument similar to the one Plaintiff advances here concerning the ALJ's use of the term "occasional" rather than the consultants' word "incidental." *Id*. The Court explained that any discrepancy between the two terms was merely a matter of semantics, as both words convey the concept of "infrequency." *Id*. (citing *Incidental Definition*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/incidental). Ultimately, in *Duran* this Court determined that the ALJ's limitation to occasional interactions sufficiently conveyed the consultants' limitations of interactions "incidental" to the work performed. *Id*. The same is true here. Moreover, given the ALJ's discussion of the record and his incorporation of other components into the RFC, which limited Plaintiff to simple, routine, and repetitive tasks and

---

[1] The ALJ in *Duran* determined that the plaintiff was "able to understand, remember and carryout simple, repetitive instructions and to make commensurate work-related decisions, in a workplace with few changes[;] . . . have occasional interaction with supervisors, co-workers and the public[; and] . . . maintain concentration, persistence and pace for 2 hours at a time during the 8-hour workday with normal breaks." 2019 WL 1568139 at *1.

16

simple work-related decisions, the Court is satisfied that the ALJ adequately accounted for all aspects of Dr. Williams's assessed social limitations, including those requiring "simple, direct and concrete" supervision.

But Plaintiff contends that the treatment of the psychological consultants' findings was erroneous in another respect: he submits that the ALJ failed to incorporate into the RFC a limitation to account for the assessed moderate limitations regarding his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent paced without an unreasonable number and length of rest periods. (Doc. 24 at 14 (citing AR at 80-82)). These mental abilities are vocationally significant, as they are abilities "critical for performing unskilled work." *See* POMS DI 25020.010(3)(i). SSA policies are clear that if a claimant is to perform unskilled work, the requirement that he be able to complete a normal workday without interruptions from his psychologically based symptoms and perform at a consistent pace on a normal break schedule is "usually strict." *See id*. In contrast to a moderate limitation in a claimant's ability to maintain concentration, a restriction to simple, routine tasks does not sufficiently account for such limitations. *Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *11 (D.N.M. Oct. 19, 2020) (holding that a moderate limitation in the ability to complete a normal workday without interruptions from psychologically based symptoms on a normal break schedule is not consistent with an RFC for unskilled work); *Vamvakerides v. Colvin*, No. CV 14-00897 SCY, 2016 WL 10538097, at *7 (D.N.M. Apr. 7, 2016) (citing *Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008)) (same). Indeed, judges in this District have suggested that moderate limitations in these areas of functioning "would likely interfere with work in almost any setting." *See, e.g.*, *Bosse v. Saul*, No. 2:18-CV-00475-LF, 2019 WL 3986046, at *8-9 (D.N.M. Aug. 23, 2019) (citing *Chapo v. Astrue*,

682 F.3d 1285, 1290 (10th Cir. 2012)). This conclusion comports with the testimony of the vocational expert in this case. When the ALJ asked whether there were any jobs available to a hypothetical individual who was "going to be off task more than 15 percent of the workday for any reason," the vocational expert testified that there were no available jobs. (AR at 62).

Certainly, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," as "[t]he ALJ, not a physician, is charged with determining claimant's RFC from the medical record." *Chapo*, 682 F.3d at 1288 (quoting *Howard*, 379 F.3d at 949). Even so, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Id*. at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). This prohibition applies equally to non-examining consultants' findings as it does to medical opinions. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007). Further, an ALJ's failure to discuss significantly probative evidence that he rejects amounts to legal error. *See id*.

Here, despite describing the state agency consultants' findings as "persuasive," the ALJ did not directly address Dr. Williams's assessed moderate limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*See* AR at 13-24). Although the ALJ did adopt an RFC limiting Plaintiff to unskilled work, "the Tenth Circuit has not held that moderate limitations in these abilities may be collapsed into an RFC of unskilled work." *Carrillo*, 2020 WL 6136160, at *11. As such, the ALJ should have accounted for the consultants' moderate limitations in these areas of functioning, either by rejecting them and explaining that rejection or by adopting them in the RFC. *See*

*Milner v. Berryhill,* No. 16-1050 GJF, 2018 WL 461095, at *16 (D.N.M. Jan. 18, 2018) ("It is the lack of adequate explanation here, in addition to the failure to account for the limitations set forth by [the non-examining consultants], whose opinions the ALJ otherwise forthrightly accepted, that requires remand."). He did neither. The Court remands so that the ALJ can remedy this error.

## V. Conclusion

The ALJ erred in his review of the redetermination of Plaintiff's eligibility application for supplemental security income by failing to adequately evaluate medical opinion evidence in accordance with controlling legal standards. Accordingly, Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 24) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**